AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

**FILED**
June 28, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Alice Portillo-Viera
DEPUTY

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Fernando Castillo | ) | Case No.  EP: 23-M-1883-MAT |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of _____ in the county of _____El Paso_____ in the
___Western___ District of ___Texas___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 201(c)(1)(B) | Bribery of public officials |

This criminal complaint is based on these facts:

See attached Probable Cause Statement hereby incorporated by reference as if fully restated herein:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Todd Petkus, FBI Special Agent
*Printed name and title*

Sworn to ~~before me and signed in my presence.~~ telephonically

Date: June 28, 2023 at 1:41 p.m.

_____
*Judge's signature*

City and state: El Paso, Texas

U.S. Magistrate Judge
*Printed name and title*

## PROBABLE CAUSE STATEMENT

1. I, Todd Petkus, hereinafter referred to as affiant, am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and conduct investigations of violations of Federal Criminal Law, including Bribery of Public Officials.

2. This affidavit is submitted in support of an arrest warrant for Fernando Castillo ("CASTILLO") for violation of Title 18, United States Code, Section 201c(1)B.

3. On June 21, 2023, FBI El Paso Field Office SAs and Task Force Officers ("TFO") from Customs and Border Protection, Office of Professional Responsibility ("CBP OPR") assigned to the Public Corruption Task Force (PCTF) were notified of an incident wherein an alien (Victim 1) was offered an immigration benefit in exchange for $5,000 by CASTILLO, who was acting in his official capacity as a United States Border Patrol Agent ("BPA").

4. Victim 1, a Mexican and El Salvadoran citizen, was being held at the United States Customs and Border Protection Central Processing Center ("CPC"), at 9201 Gateway South Boulevard in El Paso, located in the Western District of Texas. Victim 1 has no criminal history. Victim 1 was previously encountered twice by CBP with no criminal charges filed.

5. CASTILLO, regularly assigned to the Foreign Operations Branch ("FOB") with Border Patrol, was on temporary assignment to the CPC. Victim 1 was scheduled for return to Mexico on June 21, 2023. Prior to departure, Victim 1 was approached by CASTILLO, who told him/her that he ("CASTILLO") was attempting to have Victim 1 returned to Mexico instead of El Salvador.

6. On June 21, 2023, according to Witness 1, another BPA working at the CPC, CASTILLO volunteered to transport Victim 1 to the Paseo Del Norte Port of Entry ("PDN"). Video of the CPC obtained by TFOs showed Victim 1 walking out of the CPC with a BPA, wearing a Border Patrol uniform and ball cap, who fit the physical description of CASTILLO, at approximately 10:00 am.

7. Victim 1 told SAs CASTILLO drove him/her in a white van. Victim 1 said that CASTILLO transported Victim 1 alone and that no other BPA was present. Victim 1 said CASTILLO stopped the vehicle at some point before reaching PDN and told Victim 1 he could get Victim 1 "papeles" for $5,000. Affiant understands Victim 1 believed "papeles" to

mean immigration papers. CASTILLO told Victim 1 the papers would be removed from the system after 10-12 days. Once Victim 1 was in the United States with paperwork, the paperwork would no longer appear in any system and Victim 1 would essentially be free to remain in the US. Victim 1 explained that CASTILLO took possession of Victim 1's clear plastic, heat-sealed bag containing Victim 1's personal property and opened it. Victim 1 saw CASTILLO reach into Victim 1's property bag.

8. Victim 1 told investigators CASTILLO brought Victim 1 to the Paseo Del Norte Texas (PDT) Processing Center, located at 999 South Oregon Street, El Paso, Texas. Victim 1 explained that CASTILLO placed her in a cell at PDT then resealed Victim 1's property bag. Victim 1 could see CASTILLO resealing the property bag from her cell. Video from PDT obtained by TFOs showed Victim 1 being brought into the facility by a uniformed BPA fitting the physical description of CASTILLO. The BPA was observed escorting Victim 1 to a holding cell, then resealing her property bag. During Victim 1's interview with SAs, Victim 1 allowed investigators to count the remaining money in Victim 1's possession. The property bag included a tag with Victim 1's name, with "Department of Homeland Security" and serial number 16709893 printed on it. The tag indicated Victim 1 had $830 and 3,725 Mexican pesos. Four SAs were present while the money was being counted. SAs determined Victim 1 had 3,700 Mexican pesos and $330 remaining. A photograph of the money and personal property tag were taken, which confirmed both the count and initial amount represented on the tag.

9. After resealing her property bag, CASTILLO escorted Victim 1 to the voluntary return area of PDN. Video obtained by investigators showed Victim 1 being escorted by a uniformed BPA, fitting the physical description of CASTILLO. CASTILLO walked next to Victim 1 as they headed south, towards Mexico. A few minutes later, CASTILLO returned alone.

10. Victim 1 explained to investigators once he/she returned to Mexico, Victim 1 approached a shoelace vendor to buy shoelaces. Victim 1 opened the bag to have access to Victim 1's money. Victim 1 realized money ($500) had been stolen. Victim 1 returned to Customs and Border Protection Officers (CBPO) at PDN at which time the FBI and TFOs were notified of the incident.

11. Victim 1 showed CBP OPR agents Victim 1's phone. Under Victim 1's call logs, investigators saw 11 calls from a blocked number received by Victim 1. The 11 calls were received between approximately 12:02 pm to 1:12 pm. While speaking with CBP OPR, Victim 1 received a call from a blocked number. Agents recorded the ensuing conversation. Victim 1 answered and a male voice was heard asking Victim 1 "what was up". Victim 1 explained he/she was attempting to comply with what the BPA told Victim 1 to do and find a place to stay in Juarez, Mexico. Based on the context of the conversation, investigators believe the male caller was CASTILLO.

12. The next day, Thursday, June 22, 2023, at approximately 2:00 pm, a male caller from a blocked number called Victim 1. SAs were present and recorded the call. Victim 1 and the caller discussed how Victim 1 would receive the immigration papers. Victim 1 asked if the transaction was "safe" to which the caller replied, "it's very safe." Victim 1 again asked the caller if he could guarantee it was safe, to which the caller replied, "yes." Victim 1 asked for a picture of the "paper" to prove it was real. The caller responded, "mmm, I'll give it to you in person." Victim 1 asked when he would hand over the document. The caller replied: "When you come in." Victim 1 then asked when the caller planned on bringing "me" to the United States, because he/she would have the money ($5,000) ready by Tuesday. The caller replied: "Yes, ok, I'll call you in a few days… I'll call you Tuesday (June 27, 2023)." Agents believe the voice of the male caller was the same heard on the previous day.

13. On June 23, 2023, CBP OPR analysts ran an audit of Victim 1's "e3" file.[1] The analysts discovered CASTILLO modified her file. Specifically, CASTILLO changed the file from "Voluntary Return" to a "Notice to Appear" ("NTA") at approximately 9:42 am on June 22, 2023. At 10:11 am on June 22, 2023, CASTILLO reverted the file back to "Voluntary Removal." According to analysts, once changed to NTA, the file could have been printed off before being reverted to its original status. Additionally, the changes to the file were made the day after Victim 1 was removed from the United States. Your affiant believes if Victim 1 receives an NTA, it would give Victim 1 a legal reason to enter the United States.

---

[1] The e3 file is a digital processing system which tracks each encounter for aliens and tracks historic events. The file is designed to track all agent-generated actions within the system.

Additionally, Victim 1 would be free to remain in the United States if that NTA were removed from the system, as described by CASTILLO.

14. On Tuesday, June 27, 2023, SAs were present and recorded a call between Victim 1 and a blocked number with a male caller. Again, SAs believed the voice was similar to the caller of the previous two calls. The caller referenced Victim 1 by name. Victim 1 told the caller he/she had the $5,000 as requested. The caller told Victim 1 he would meet him/her at PDN and escort Victim 1 to a bus stop. The caller told Victim 1 he/she would have to buy a bus ticket to Denver, Colorado, and a follow-on ticket to Maryland. Victim 1 asked the caller if he/she would be going to court and the man told Victim 1 he would explain everything the next day.

15. On June 28, 2023, DHS OIG Agents conducted surveillance at CASTILLO's residence in El Paso. At approximately 4:12 am, surveillance units saw CASTILLO wearing a US BP uniform entering a red Hummer H3. Agents followed CASTILLO from his home to PDN. At approximately 4:27am, CASTILLO called Victim 1. CASTILLO met with Victim 1 and brought her through the voluntary removal area at PDT. Your affiant and other agents saw CASTILLO exiting a fenced in area with Victim 1. Agents approached CASTILLO, who had in his possession, a Notice to Appear with Victim 1's name on it. Victim 1 told agents that CASTILLO told her to hold on to the money until they got to the vehicle.

16. On June 28, 2023, SAs conducted a recorded interview of CASTILLO. CASTILLO was advised of his Miranda Rights and agreed to speak with SAs. CASTILLO told agents he met Victim 1 while he/she was at PDT. According to CASTILLO, Victim 1 told CASTILLO he/she was a Mexican citizen. CASTILLO claimed Victim 1 was insistent he/she was Mexican and not from El Salvador. CASTILLO recalled going to CPC to process juvenile aliens. While there, he saw Victim 1. Victim 1 again insisted he/she was Mexican. CASTILLO told Victim 1 the best he could do was get Victim 1 to Mexico. CASTILLO began to transport Victim 1.

17. While driving Victim 1 in a BP van, but before exiting the secure area of the CPC, CASTILLO heard Victim 1 banging on the window divider. CASTILLO claimed Victim 1 asked to call her husband. CASTILLO opened Victim 1's personal property there, gave Victim 1 his/her phone, and moved Victim 1's El Salvadoran identification to the back of

his/her papers. CASTILLO stated he saw money, approximately $1,000 and some Mexican pesos. CASTILLO denied taking any of Victim 1's money.

18. CASTILLO explained he brought Victim 1 to PDT for processing. CASTILLO confirmed he put Victim 1's belongings in a new property bag and sealed it. CASTILLO claimed Victim 1 was returned to Mexico and within 20 minutes, he received a call from a Mexican immigration official regarding Victim 1. According to CASTILLO, the official told CASTILLO that Victim 1 was not a Mexican national. CASTILLO told agents he became concerned that it would somehow come back on him if Victim 1 got hurt in Mexico. CASTILLO then looked in Victim 1's e3 file and called his/her phone number with his personal cellular telephone. CASTILLO told agents he blocked his number. CASTILLO claimed he repeatedly called Victim 1 in order to get him/her to return to PDN so he could bring him/her to CPC to be removed to El Salvador. CASTILLO did not tell his supervisors.

19. CASTILLO told agents he changed Victim 1's e3 file, printed out a Notice to Appear, forged signatures of other BPAs, and brought it with him to meet Victim 1. CASTILLO told agents he took the document to continue the ruse and that he was going to shred the document after. CASTILLO admitted the document was fraudulent.

20. Based on the above information, affiant believes there is sufficient probable cause that on June 27, 2023, in the Western District of Texas, Fernando Castillo did commit a violation of Title 18, United States Code, 201 – Bribery of Public Officials.